# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**Docket#:**

**COMPLAINT:**

**Erica N. Azurak**

**VS.**

Toms River Township Municipal Court

Toms River Township Police Department

Pretrial Services of New Jersey

Ocean County, Ocean County Prosecutors Office

State of New Jersey

NJ Office of the Attorney General

Mathew J. Plotkin

Nicholas Salmen Chief Statewide Pretrial Services Program Manager,

Delsa chant. pretrial services

Audrea Richardson, Team leader pretrial services

KELLY ROSEN, Pretrial Services

Team Leader; MARY E. COLALILLO,

Andrew T Leimbach,

Bradley Billhimer,

Monmouth County Corrections institution

Monmouth County prosecutor's office

JOHN DOES 1-30 (Fictitious individuals), ABC CORPS 1-30 (Fictitious Corps.), Jointly and Severally, Official and Individual Capacities,

**In conclusion of the facts and given statements**

1. Plaintiff, Erika Azurak, stands accused but un-convicted of any crimes. Under Bedrock Principles of American law, PLA presumed innocent. Including, all expected & standard of practice innocent people, they are presumptively entitled to liberty from any pre-trial restraint.

2. Plaintiff suffers from severe mental disorders (PTSD, panic disorder, panic attacks, clinical depression) p0er medical diagnosis

3. My name is Erica Azurak, on the date of May 7,2022 I returned home approx. 12pm. My two roommates were there (Mary & Anthony) as well as friend of theirs I had not met prior to this date.

4. A few hours later the house was ambushed with police/joint task force of NJ.

5. With only Mary and I in the house this ambush occurred without any cause or personal connection to the team who broke into our home- we had no idea as to why they were there. After this wrongful strike team break in, Mary and I were both taken into custody. I was brought into a private room and questioned.  I told them everything I knew, I had only lived there for approx.  two weeks before.

6. They charged me with the drug methamphetamine (20 grams) of which was found on another person not at the residence or on property at the time of the warrant. and nothing was found in the home where Mary and I were at the time of the bust but we were still arrested detained and charged with illegal substance found outside of the home on another person.

7. Since this date I have tried to contact the courthouse and clerk's office to find out about any court dates I may have for this wrongful act and have had other people such as Brian from the re-entry program and friends of mine to see if I was calling the wrong office because to my knowing I had no court date nor was I assigned a public defender.

8. I was however apprehended at my mother's home I was approached by the marshals office while I was putting my two and four year old sons in the car and getting ready to go to my first day of work they came walking into my backyard with dogs stating I had a warrant for missing court when I was told five days prior by the court house I had no court date on file yet for this matter.

9. The following day of my incarceration I spoke to someone from pretrial services and asked why I was being charged with contempt of court when I didn't have a court date or a P.D. but they could not answer, then a few hours later I was released.

10. Though I was released I'm unable to return to my normal life due to these falsely accused then falsely arrested again this last time I can`t get employment with this on my background when I did get a job at the goodwill store in brick NJ, I lost it do to getting wrongfully arrested that Tuesday for reasons unknown to myself and never made clear before or during arrest. Since this incident, I have done the re-entry program to try and get help with getting a job thanks to this its proven to be unbearable to deal with. Not only am I profiled wherever I go, but I have to re-live this and furthermore traumatize my 4 children in effect of the I have to explain it in defense my four children who saw their mother get arrested. They now suffer with constant night terrors when they hear a siren, someone knocks to loudly on our door, or when my 4-year-old sees a cop. I'm trying to raise them to always feel safe around officers and to seek them out if any danger ever threatened their safety.

11. CHARGE 8.47C —8.47C FALSE IMPRISONMENT (FALSE ARREST) (Approved 1/97) A. Compensatory Damages If you find that the defendant did falsely imprison plaintiff, you must determine whether the false imprisonment was proximate cause of the injuries for which the plaintiff complains. Proximate cause is that which directly, naturally, and probably was a substantial factor in bringing about the injuries and without which the injuries would not have occurred. Even if there was false imprisonment, if the false imprisonment was not a proximate cause of the injuries complained of, there cannot be any recovery for compensatory damages. If you find that the false imprisonment was a proximate cause of the plaintiff's injuries, he/she would be entitled to a verdict for compensatory damages in such an amount as would constitute reasonable compensation for loss of time, any physical injuries sustained by him/her and for mental and emotional stress resulting from the indignity to which he/she was subjected. [Discuss facts relating to proof of damages and how those damages are to be measured.] CHARGE 8.47C — Page 2 of 2 B. Punitive Damages NOTE TO JUDGE The trial judge should charge either Model Civil Charge 8.60 or 8.61 depending on when the cause of action was filed. The plaintiff is entitled to reasonable compensation for physical injuries sustained by him/her and for humiliation as well as mental and emotional stress resulting from the indignity to which he/she was subjected. Cone v. Central R.R. Co., 62 N.J.L. 99 (Sup. Ct. 1898); Price v. Phillips, 90 N.J. Super. 480 (App. Div. 1966). In false imprisonment actions filed prior to the effective date of the Punitive Damages Act, N.J.S.A. 2A:15-5.1 et seq., punitive damages may be awarded even though the jury did not award any compensatory damages. Zalewski v. Gallagher, 276 N.J. Super. 360, 369 (App. Div. 1997).

12. For centuries, the mechanism for ensuring a defendant's liberty from pre-trial restraint was monetary bail. A person accused but un-convicted of a bailable offense could not be subject to any pre-trial deprivation of liberty without the option of bail, unless the government showed that no amount of money would serve the government's interest in securing the defendant's future appearance (or, more recently, that detention was necessary to protect the community from danger). Bail is thus a liberty-preserving mechanism as old as the Republic.

13. The availability of bail is enshrined in the Bill of Rights. The Eighth Amendment forbids "[e]xcessive bail," protection that presupposes the option of bail. And the vast majority of state constitutions throughout American history, including New Jersey's, have likewise guaranteed defendants (in all but capital cases) the option of bail before being subjected to pre-trial deprivations of liberty.

14. The option of bail to avoid pre-trial deprivations of liberty no longer exists in New Jersey. Under the Criminal Justice Reform Act ("CJRA"), which took effect January 1, 2017, New Jersey courts may not consider releasing a defendant on bail unless they first conclude that no combination of non-monetary conditions-including substantial deprivations of pre-trial liberty like home detention or 24-hour electronic monitoring through an "ankle bracelet"—will ensure the defendant's appearance at trial. Thus, no matter how much an accused would prefer posting bail and securing his liberty, New Jersey law mandates that home detention or an electronic monitoring device be imposed instead. .

15. **R**equesting Injunction against state criminal prosecution and cash bail Available again for all New Jersey citizens. The Younger abstention doctrine limits the ability of a federal court to interfere with pending state criminal prosecutions absent extraordinary circumstances. See, e.g., Olsson v. O'Malley, 352 F. App 'x 92, 94 (7th Cor. 2009). Exceptional circumstances exist where irreparable damage would occur, such as when the plaintiff claims the criminal case resulted from prosecutorial harassment or that the prosecution was brought in bad faith.

.

### JURISDICTION AND VENUE

16.  This action seeks declaratory and injunctive relief, damages, and other relief pursuant to 28 U.S.C. §§2201 and 2202 and 42 U.S.C. §§1983 and 1988.

17. This Court has subject-matter jurisdiction over Plaintiffs' federal constitutional claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3).

18.  Venue is proper pursuant to 28 U.S.C. §1391(b)(2).

19. There is an active, justiciable controversy between the parties over whether Defendants' imposition of liberty-restricting conditions of pre-trial release on Plaintiff's and other presumptively innocent criminal defendants-including prospective clients of sureties like Lexington National-without providing the option of monetary bail violates the Constitution.

20. Declaratory relief will resolve this controversy and eliminate the burden imposed on the Plaintiffs' constitutional rights.

21.  A preliminary injunction preventing Defendants from enforcing the challenged statutory provisions will shield Plaintiffs' constitutional rights from ongoing harm while this litigation is pending.

22. A permanent injunction against Defendants, preventing them from enforcing the challenged statutory provisions, will protect Plaintiffs' rights prospectively after the final resolution of this matter.

23. Plaintiff Giordano at this juncture Is Being forced by the Court to decide. Between. Withdrawing the plea and being put back into. Monmouth County corrections until trial Or To just Take my rights being violated. Plaintiff feels strongly his rights are being violated either way, unless this injunction is granted.

24. If the injunction is granted plaintiff would be able to. Restore his liberty. By paying his bail, however, the court at this time could not offer him that option but instead had to consider whether non-financial conditions would assure his appearance before considering bail.

25. Lexington National is a Florida corporation based in Maryland and licensed to do business and operating extensively in New Jersey. Lexington National operates through independent bail bondsmen who are licensed by the New Jersey Department of Insurance and registered with the Superior Court clerk. Lexington National stands ready, willing, and able to issue and post a bail bond to Plaintiff Giordano and others similarly situated.

26. Defendant (Nicholas Salmen, Delsa chant, Audrea Richardson, KELLY ROSEN, MARY E. COLALILLO, are the Team Leaders for Pretrial Services in the Criminal Division of the Superior Court of New Jersey. Defendants are responsible for enforcing the conditions of release against Plaintiff. Defendant' is sued for declaratory and injunctive relief in her official capacity and for damages in her personal capacity.

27. Defendants are responsible for enforcing New Jersey laws in OCEAN & MONMOUTH County, including the provisions of the CJRA challenged here. N.J.S.A. 2A:158-5. Defendant Colalillo would be responsible for any additional prosecution or other action taken against Plaintiff in conjunction with the conditions of his pretrial release. Defendants are sued for declaratory and injunctive relief in her official capacity and for damages in her personal capacity.

28. the Attorney General of New Jersey. Defendant AG Mathew J. Platkin is responsible for enforcing New Jersey laws statewide, including the provisions of the CJRA challenged here. Defendant would be responsible for any additional prosecution or other action taken against Plaintiff in conjunction with the conditions of his pre-trial release. Defendant is sued for declaratory and injunctive relief in his official capacity and for damages in his personal capacity.

29. Plaintiff Giordano, by way of complaint against the Defendants, New Jersey office of the Public Defender, Joe Krakora Esq, he Law Offices of George J. Mardinly Esq, The Law Office Law office of George B. Summers Jr, Esr, The Law Office of Regina Laffey. Rucco, LLC., Richard H Archer Esq, Adam Mitchell. Esq Vita mini, Van Lane, The Law Offices of Kathleen R wall, Daniel Judd Maxwell Esq Says:

30. public defender's office of New Jersey; further the cause of action which is the subject of this suit a Kurd and accrued in Ocean County. 4. defendants undertook to provide legal services for plaintiff in connection with State of New Jersey vs David

Giordano herein after legal matter at all times defendants held himself out as competent in the area of law dealing with the legal matter for which plaintiff retained the services of defendant plaintive and defendant acted under an attorney slash client relationship in which defendant undertook to represent plaintiff. 5.Defendants were required to exercise the same legal skill as a reasonably competent attorney and to use reasonable care in determining and implementing a strategy to be followed to achieve the plaintiff's legal goals ,as a fiduciary of plaintiff defendant was obligated to treat all information relating to a plaintiff's representation as confidential and to jealously represent the plaintiffs interest including the disclosure of any conflicts of interest that might impair the defendant to ability to represent the plaintiff 1. In the course of handling the legal matter for the plaintiff defendants neglected Lee failed to act with a degree of competence generally possessed by attorneys in the state who handled legal matters similar to plaintiffs 2. I need direct and proximate result of defendant's negligence and or malpractice and fraudulent things go South inducement plaintiff sustained actual damages in the form of intentional infliction of emotional distress.

## FACTUAL ALLEGATIONS

### A. Historical and Constitutional Background

50. "Bail … is basic to our system of law." Schilb v. Kuebel, 404 U.S. 357, 365 (1971), bail has preserved the "traditional right to freedom before conviction" for almost a thousand years. Stack v. Boyle, 342 U.S. 1, 4 (1951).

51. The defining documents of English liberty—the Statute of Westminster of 1275, the Petition of Right of 1628, the Habeas Corpus Act of 1679, and the English Bill of Rights of 1689—all recognize a defendant's right to bail. See Cobb v. Aytch, 643 F.2d 946, 958 n.7 (3d Cir. 1981).

52. Early American authorities likewise recognized the right to bail. The Northwest Ordinance, adopted by the Continental Congress in 1787, provided that "[a]ll persons shall be bailable, unless for capital offenses where the proof should be evident, or the presumption great." 1 Stat. 50, 52. The Judiciary Act of 1789, adopted on the same day that Congress proposed the Bill of Rights to the States for ratification, directed that "upon all arrests in criminal cases, bail shall be admitted except where the punishment may be death."

53. Against this backdrop in which the right to bail was presumed, the People ratified the Eighth Amendment, which provides "[e]xcessive bail shall not be required."

54. State constitutions, too, have overwhelmingly recognized a right to bail as an option to avoid pre-trial deprivations of liberty. "[E]very state that entered the Union after 1789, except West Virginia and Hawaii, guaranteed a right to bail in its original state constitution." Donald B. Verrilli, Jr., The Eighth Amendment and the Right to Bail: Historical Perspectives, 82 Colum. L. Rev. 328, 351 (1982).

55. The right to bail is not absolute. Courts may deny bail to a defendant if no amount of money will assure his appearance at trial or the safety of the community. United States v. Salerno, 481 U.S. 739, 746-55 (1987). And legislatures may define categories of crimes, such as capital offenses, or other "special circumstances" in which detention without bail may be permitted. Id. at 749.

56. But outside such "carefully limited" exceptions, id. at 755, the Constitution has always guaranteed a defendant the opportunity to avoid pre-trial deprivations of liberty through non-excessive monetary bail. B. Bail in New Jersey

57. For more than three centuries, New Jersey recognized the "right of the individual to bail" as "a fundamental right founded in freedom and human dignity, reflected in the ever-present presumption of innocence, and requiring firm articulation in [state] Constitutions." State v. Johnson, 61 N.J. 351, 355, 360 (1972).

58. The 1682 Laws of the Province of East Jersey provided that "all persons arrested shall be bailable by sufficient sureties," with a narrow exception for "capital offenses, where proof is evident or presumption great." Id. at 354.

59. New Jersey's 1844 Constitution incorporated that same protection for monetary bail, providing that "[a]ll persons shall, before conviction, be bailable by sufficient sureties, except for capital offences, when the proof is evident or presumption great." N.J. Const. of 1844, art. I, §10.

60. New Jersey's 1947 Constitution retained the same longstanding right to bail "by sufficient sureties, except for capital offences, when the proof is evident or presumption great." Id.; N.J. Const., art. I, §11.

61. Consistent with the historic purpose of bail to ensure the appearance of the defendant at trial, New Jersey for more than three centuries did not permit courts to consider a defendant's potential dangerousness in setting bail. C. The Challenged Law

62. In 2012, Governor Christie called for a state constitutional amendment to reverse New Jersey's historic practice and permit pre-trial detention of defendants deemed likely to commit future crimes.

63. New Jersey's Chief Justice then established and chaired the Joint Committee on Criminal Justice, which included members from all three branches of state government. In March 2014, the committee produced a report recommending that the state authorize pre-trial detention based on a defendant's perceived dangerousness and that the state replace the traditional system of release on monetary bail with a new "risk-based instrument" that would "aid judges as they craft conditions of release … like electronic monitoring, house arrest, and reporting." N.J. Judiciary, Report of the Joint Committee on Criminal Justice 2-3 (Mar. 10, 2014), available at http://bit.ly/2pyNFUV ("Joint Committee Report").

64. Soon after publication of the Joint Committee Report, the New Jersey legislature passed (in a special session, through procedurally deficient mechanisms) and Governor Christie signed the CJRA, which dramatically changed the state's pretrial

detention and release procedures, largely in keeping with the committee's recommendations. See P.L. 2014, c.31, §1 (codified at N.J.S.A. 2A:162-15 et seq.).

65. The CJRA creates a five-stage, hierarchical process for courts to follow in making pre-trial custody determinations for defendants charged with offenses through a complaint-warrant. N.J.S.A. 2A:162-16d(1); see State v. Robinson, No. 078900, 2017 WL 1908548, at *6 (N.J. May 10, 2017) (describing this "hierarchy").

66. First, the court "shall order" the pre-trial release of the defendant on personal recognizance or execution of an unsecured appearance bond (in essence, a promise to appear) when the court finds that such a release would "reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, and that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process." N.J.S.A. 2A:162-17a.

67. Second, if the court finds at stage one that release on personal recognizance or an unsecured appearance bond will not provide the requisite assurance, the court "may order" pre-trial release subject to the conditions that the defendant "not commit any offense during the period of release … avoid all contact with an alleged victim of the crime … [and] avoid all contact with" witnesses who may testify concerning the offense. N.J.S.A. 2A:162-17b(1).

68. The court may then add "the least restrictive condition, or combination of conditions, that the court determines will reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, and that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process." N.J.S.A. 2A:162-17b (2); see Robinson, 2017 WL 1908548 at *6. Those conditions "may include," inter alia:
- remaining "in the custody of a designated person";
- • restrictions "on personal associations, place of abode, or travel".
- reporting "on a regular basis to a designated law enforcement" or other government agency.
- complying "with a specified curfew".
- refraining from possessing a firearm.
- undergoing medical or psychological treatment.
- returning "to custody for specified hours following release for employment, schooling, or other limited purposes"; placement "in a pretrial home supervision capacity with or without the use of an approved electronic monitoring device," including at the defendant's expense; and
- "Any other condition" necessary to provide the requisite assurances. N.J.S.A. 2A:162-17b (2).

69. Third, if the court "does not find, after consideration" at stage two of all the conditions described above that release subject to any combination of these conditions "will reasonably assure the eligible defendant's appearance in court when required," the court then, and only then, "may order the pretrial release of the eligible defendant on monetary bail." N.J.S.A. 2A:162-17c(1). In other words,

"[m]onetary bail may be set for an eligible defendant only when it is determined that no other conditions of release will reasonably assure the eligible defendant's appearance in court when required." N.J.S.A. 2A:162-15 (emphasis added).

70. In addition, the court "may only impose monetary bail … to reasonably assure the eligible defendant's appearance." N.J.S.A. 2A:162-17c (1). "The court shall not impose the monetary bail to reasonably assure the protection of the safety of any other person or the community or that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process, or for the purpose of preventing the release of the eligible defendant." Id.

71. Fourth, if the court "does not find, after consideration" that either nonmonetary conditions alone (as assessed at stage two) or monetary bail alone (as Case 1:17-cv-04317-JBS-KMW assessed at stage three) will provide the requisite assurances, the court may order pre-trial release subject to a combination of non-monetary conditions and monetary bail. N.J.S.A. 2A:162-17d (1)

72. Finally, if the prosecutor seeks pre-trial detention and the court finds by "clear and convincing evidence that no amount of monetary bail, non-monetary conditions of pretrial release or combination of monetary bail and conditions would reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, and that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process," the court can order pre-trial detention. N.J.S.A. 2A:162-18a (1).

73. At every stage, the process includes consideration of the result of a statutorily mandated "risk assessment" conducted with a new "risk assessment instrument" that is purportedly "objective, standardized, and developed based on analysis of empirical data and risk factors relevant to the risk of failure to appear in court when required and the danger to the community while on pretrial release." N.J.S.A. 2A:162-25.

74. In November 2014, New Jersey voters approved a constitutional amendment replacing the centuries-old guarantee that "[a]ll persons shall … be bailable by sufficient sureties," except in some capital cases, with a provision that "[p]retrial release may be denied to a person if the court finds that no amount of monetary bail, non-monetary conditions of pretrial release, or combination of monetary bail and non-monetary conditions would reasonably assure the person's appearance in court when required, or protect the safety of any other person or the community, or prevent the person from obstructing or attempting to obstruct the criminal justice process." N.J. Const. art. I, §11.

75. In sum, the CJRA "changed the landscape of the State's criminal justice system," replacing a system that guaranteed a monetary bail determination to all defendants except those in certain capital cases with a system that authorizes pretrial detention based on perceived dangerousness and imposition of severely restrictive conditions such as electronic monitoring and home detention without any opportunity to post monetary bail. Robinson, No. 078900, 2017 WL 1908548, at *4.

76. The Defendant's have confirmed that the "Bail Reform Law is intended to end New Jersey's historical reliance on monetary bail." Christopher S. Porrino, Attorney General of New Jersey, Attorney General Law Enforcement Directive No. 2016-6, at 55 (Oct. 11, 2016), available at http://bit.ly/2pjHDeP.

77. Monetary bail is "a last resort" that is reserved only for "limited situations"—i.e., "when the court finds that release on non-monetary conditions will not reasonably assure the defendant's appearance in court when required." Id. In other words, "there shall be a presumption against seeking monetary bail." Id. at 56.

78. New Jersey's courts are also instructed to prioritize non-monetary conditions of pre-trial release over monetary bail. Under the New Jersey Rules of Court, a court has no authority to consider monetary bail unless and until it considers and rejects non-monetary pre-trial release options. See, e.g., Rule 3:26-1(a)(1) ("[M]onetary conditions may be set for a defendant but only when it is determined that no other conditions of release will reasonably assure the defendant's appearance in court when required.").

79. Criminal defendants subject to non-monetary conditions of release have no authority to challenge the conditions unless "there has been a material change in circumstance that justifies a change in conditions." Rule 3:26-2(c). D. The Impact of the Challenged Law

80. New Jersey's new pre-trial release and detention procedures took effect January 1, 2017.

81. According to the state's preliminary statistics, in the first three months of 2017, New Jersey courts granted 1,262 pre-trial detention motions from prosecutors—a procedural mechanism that allows detention without the consideration of bail and that did not exist before the new law. N.J. Courts, Criminal Justice Reform Statistics: January 2017-March 2017, Chart A, http://bit.ly/2q68u9Y.

82. According to the same statistics, approximately 7,579 individuals were released subject to non-monetary conditions in the first three months of 2017 including 1,286 who were released subject to the most severe conditions including home detention and electronic monitoring. Id.

83. Although New Jersey appears not to have issued official statistics on the number of defendants released on monetary bail under the new law, one prominent newspaper reported that of "the 3,382 cases statewide that were processed in the first four weeks of January, judges set bail only three times." Lisa W. Foderaro, New Jersey Alters its Bail System and Upends Legal Landscape, N.Y. Times (Feb. 6, 2017), http://nyti.ms/2llmeMR.

84. Thus, while bail remains a theoretical option, "the reality is that judges have nearly done away with it." Id.; see also Nicole Hong & Shibani Mahtani, Cash Bail, a Cornerstone of the Criminal-Justice System, Is Under Threat, Wall St. J. (May 22, 2017), http://on.wsj.com/2qHz5hb (describing impact on bail industry).

85. Lexington National is one of many commercial sureties that has been severely harmed by the drastic reduction in the number of defendants given the option of monetary bail under the new law.

86. If New Jersey criminal defendants had the option of monetary bail, Lexington National would help them to take advantage of that option.

87. On April 6, 2017, Plaintiff Brittan B. Holland was arrested for his alleged participation in a bar fight.

88. Under the system of monetary bail that existed in New Jersey for more than three hundred years before January 1, 2017, a court could have set reasonable, non-excessive monetary bail to ensure Plaintiff appearance at trial.

89. Under the bail schedules promulgated by the Administrative Office of the Courts, bail likely would have been set at $35,000 to $100,000, with a 10 percent cash bail option. See Revised Statewide Bail Schedules at 23 (Dec. 30, 2016), available at http://bit.ly/2pwj4qy.

90. If bail had been set, Plaintiff would have used his own financial resources and or those of his family (likely with a surety company such as Lexington National) to pay the required amount for release.

91. The CJRA barred the court from setting monetary bail unless it first determined that no combination of non-monetary conditions—including highly restrictive conditions such as home detention and electronic monitoring—would reasonably assure Plaintiff Holland's appearance at trial.

92. Prosecutors initially sought to detain Plaintiff Giordano pending trial.

93. Faced with the threat of pre-trial detention and no prospect of release on monetary bail, Plaintiff Giordano agreed to accept release subject to several of the most draconian non-monetary conditions, which the court found (unsurprisingly) would ensure his appearance at sensing.

94. The court did not—and could not, under the CJRA, court rules, and directives—consider releasing Plaintiff Holland subject to monetary bail.

95. Home detention is a severe restriction of Plaintiff Holland's liberty. Among other burdens, home detention means that Plaintiff Holland cannot shop for basic necessities such as food,).

96. The requirement to report in person to the pretrial services office is also a restriction on Plaintiff Holland's liberty. Among other things, the condition interferes with his job because he must perform the in-person reporting even if he has conflicting work obligations.

97. Collectively, the restrictive conditions imposed on Plaintiff are severely disruptive, cause him to worry about his job security, disrupt his family life and relationship with his son, and make him feel that his life is up in the air.

98. Yet under the CJRA, the court was not even allowed to consider the liberty-preserving option of monetary bail before imposing these liberty-restricting conditions on Plaintiff Holland.

**COUNT ONE VIOLATION OF THE RIGHT TO BAIL**

**(Eighth and Fourteenth Amendments)**

99. Plaintiffs hereby re-allege and incorporate by reference the allegations in paragraphs 1-118.

100.     The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

101.     The Supreme Court has stated, and the Third Circuit has held that the Eighth Amendment protection against excessive bail applies to the States. See McDonald v. City of Chicago, 561 U.S. 742, 764 n.12 (2010); Sistrunk v. Lyons, 646 F.2d 64, 71 (3d Cir. 1981).

102.     The Eight Amendment's protection against "excessive bail" has always been understood to refer to monetary bail. See, e.g., Salerno, 481 U.S. at 754 ("bail must be set by a court at a sum designed to ensure" statutory objective) (emphasis added); Stack, 342 U.S. at 5 (describing bail as a "bond or the deposit of a sum of money subject to forfeiture") (emphasis added).

103.     The Eighth Amendment protection against pre-trial deprivation of liberty through "[e]xcessive bail" necessarily implies the option of bail to avoid a pre-trial deprivation of liberty in the first place, just as the Sixth Amendment right to a speedy trial implies the option of a trial. Otherwise, the prohibition on excessive bail could be rendered superfluous by denying bail in all cases. The only way to give meaning to the Eighth Amendment protection against excessive bail is to recognize the logically antecedent "right to bail before trial." Stack, 342 U.S. at 4; see United States v. Motlow, 10 F.2d 657, 659 (7th Cir. 1926) (Butler, Circuit J.) (Eighth Amendment "implies, and therefore safeguards, the right to give bail"); Sistrunk, 646 F.3d at 70 n.23 ("The constitutional right to be free from excessive bail thus shades into a protection against a denial of bail.").

104.     In other words, the Eighth Amendment "bail clause should be interpreted to protect and ratify the … right to bail as a fundamental principle of American criminal jurisprudence." Verrilli, Right to Bail, 82 Colum. L. Rev. at 354.

105.     Although a court may deny bail when no amount of money will reasonably assure the defendant's presence at trial or when releasing the defendant would endanger the community, the Eighth Amendment requires that the option of bail remain available before a defendant is deprived of pre-trial liberty outside such "carefully limited exception[s]." Salerno, 481 U.S. at 753-55.

106.     The CJRA violates the Eighth Amendment by permitting judges to consider monetary bail "only when it is determined that no other conditions of release will reasonably assure the eligible defendant's appearance in court when required." N.J.S.A. 2A:162-15; see N.J.S.A. 2A:162-17c(1).

107.     Moreover, because the permissible "conditions of release" that courts must consider before offering monetary bail include extremely restrictive conditions like electronic monitoring and home detention, the law not only subordinates monetary bail to other conditions (which are not constitutionally protected), but effectively takes monetary bail off the table as an option entirely.

108. New Jersey's law is unprecedented. Even jurisdictions like the District of Columbia, where monetary bail does not exist as a practical matter, do not formally subordinate bail to other, more restrictive conditions in the way that New Jersey does. See D.C. Code §23-1321(c)(1)(B)(xiii) (allowing consideration of monetary bail alongside other conditions).

109. By imposing substantial deprivations of pre-trial liberty on Plaintiff Holland and other presumptively innocent defendants without offering the option of non-excessive bail to assure their appearance at trial, Defendants violate Plaintiffs' Eighth Amendment rights.

110. Defendants' violation of Plaintiffs' Eighth Amendment rights has caused them substantial damages. COUNT TWO DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW (Fourteenth Amendment)

111. Plaintiffs hereby re-allege and incorporate by reference the allegations in paragraphs 1-131.

112. The Fourteenth Amendment Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

113. The Due Process Clause's protection of "liberty" has "always … been thought to encompass freedom from bodily restraint and punishment." Ingraham v. Wright, 430 U.S. 651, 673-74 (1977).

114. The protection against bodily restraint includes not only freedom from "government custody, detention, or other forms of physical restraint," Zadvydas v. Davis, 533 U.S. 678, 690 (2001), but also "the right to move freely about one's neighborhood or town," Lutz v. City of York, 899 F.2d 255, 268 (3d Cir. 1990); see also 1 William Blackstone, Commentaries *134 ("personal liberty consists in the power of locomotion, of changing situation, or moving one's person to whatsoever place one's own inclination may direct, without imprisonment or restraint, unless by due course of law").

115. The Due Process Clause's protection of liberty applies to criminal defendants awaiting trial, who "remain clothed with a presumption of innocence and with their constitutional guarantees intact." Pugh v. Rainwater, 572 F.2d 1053, 1056 (5th Cir. 1978) (en banc).

116. Under the Due Process Claus, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Salerno, 481 U.S. at 755. 138. As a "general rule," therefore, "the government may not detain a person prior to a judgment of guilt in a criminal trial." Id. at 749.

117. By subjecting Plaintiffs and other presumptively innocent criminal defendants to restrictive conditions of release, including home detention and GPS monitoring through an ankle bracelet, intrude on the constitutionally protected right to liberty-"freedom from bodily restraint." Ingraham, 430 U.S. at 674.

118. "Every confinement of the person is an imprisonment, whether it be in a common prison or in a private house, … and when a man is lawfully in a house, it is

imprisonment to prevent him from leaving the room in which he is." Wallace v. Kato, 549 U.S. 384, 388-89 (2007) (quotation marks omitted).

119. By imposing liberty-restricting conditions on Plaintiff and other presumptively innocent criminal defendants without offering them the historically required option of non-excessive monetary bail that would reasonably assure their appearance at trial and protect the community, Defendants violate the procedural component of the Due Process Clause.

120. Defendants also violate the Plaintiffs' substantive rights under the Due Process Clause because the option of non-excessive bail for a bailable offense is "fundamental to our scheme of ordered liberty" and "deeply rooted in this Nation's history and tradition." McDonald, 561 U.S. at 767. The Supreme Court has held that bail is "basic to our system of law," Schilb, 404 U.S. at 365, and a "constitutional privilege" to which pre-trial defendants are "entitled," United States v. Barber, 140 U.S. 164, 167 (1891).

121. The Supreme Court has equated the "traditional right to freedom before conviction" with the "right to bail before trial." Stack, 342 U.S. at 4.

122. The Third Circuit has similarly held that "bail constitutes a fundament of liberty underpinning our criminal proceedings" that "has been regarded as elemental to the American system of jurisprudence." Sistrunk, 646 F.2d at 70.

123. Likewise, bail is deeply rooted in this Nation's history and tradition. The right to bail predates the Constitution, having been recognized in the Massachusetts Body of Liberties in 1641 and other fundamental documents of the Founding Era; having been protected by federal law since the Northwest Ordinance of 1787 and the Judiciary Act of 1789, and having been protected in the overwhelming majority of state constitutions.

124. The right to bail enjoys a historical pedigree that is as well established-if not more so-than other rights protected by the Due Process Clause. For example, when the Fourteenth Amendment was ratified in 1868, 22 of 37 state constitutions included the right to keep and bear arms that the Supreme Court found protected by the Due Process Clause in McDonald, 561 U.S. at 777. An even greater number-29 states constitutions-protected a right to bail. See Matthew J. Hegreness, America's Fundamental and Vanishing Right to Bail, 55 Ariz. L. Rev. 909, 934-35 (2013).

125. In sum, if a defendant's right to be free from restrictions on his liberty without first being offered the option of non-excessive monetary bail is not directly protected by the Eighth Amendment, it must be protected by the Due Process Clause of the Fourteenth Amendment.

126. Defendants' violation of Plaintiffs' rights under the Due Process Clause has caused them substantial damages. COUNT THREE UNREASONABLE SEARCH AND SEIZURE (Fourth and Fourteenth Amendments)

127. Plaintiffs hereby re-allege and incorporate by reference the allegations in paragraphs 1-149.

128.     The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

129.     The Fourth Amendment applies against the States through the Fourteenth Amendment. See, e.g., Camara v. Mun. Ct. of City & Cty. of S.F., 387 U.S. 523, 528 (1967).

130.     Subjecting a person to a GPS-tracking electronic monitor constitutes a Fourth Amendment "search." Grady, 135 S. Ct. at 136

131.     Likewise, pre-trial release conditions such as home detention and mandatory reporting to pre-trial services constitute a Fourth Amendment "seizure." United States v. Jacobsen, 466 U.S. 109, 113 n.5 (1984) (a "meaningful interference, however brief, with an individual's freedom of movement" is a seizure).

132.     A criminal defendant who has been released before trial "does not lose his or her Fourth Amendment right to be free of unreasonable" searches and seizures. United States v. Scott, 450 F.3d 863, 868 (9th Cir. 2006).

133.     Moreover, a defendant's consent to Fourth Amendment searches or seizures as a condition of release does not immunize the restrictions from constitutional scrutiny. Id. at 866.

134.     The reasonableness of a Fourth Amendment search or seizure is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." Wyoming v. Houghton, 526 U.S. 295, 300 (1999).

135.     The degree to which the search and seizure, particularly the 24-hour GPS electronic monitoring through an ankle bracelet, intrudes on Plaintiff Holland's privacy is severe. Not only does the ankle bracelet severely restrict Plaintiff's freedom of movement—requiring him, for example, to stay within cord-length of a power outlet while the device is charging for multiple hours a day and preventing him from traveling on a commercial airplane—but the device also discloses a massive amount of private information about Plaintiff Holland's life to the state.

136.     "GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations." United States v. Jones, 565 U.S. 400, 415 (2012) (Sotomayor, J., concurring).

137.     The intrusion on Plaintiff's privacy is particularly severe because it reaches into his home, where his interest in privacy is "at its zenith." Scott, 450 F.3d at 871; see United States v. Karo, 468 U.S. 705, 714 (1984).

138.     On the other side of the balance, Defendants cannot show that intrusive electronic monitoring of the kind imposed on Plaintiff Holland is "needed for the promotion of" their "legitimate governmental interest []" in securing his appearance at trial when state law prohibited consideration of a less restrictive mechanism that has been used to promote precisely that governmental interest for almost the entire

history of Anglo-American law: monetary bail. Houghton, 526 U.S. at 300 (emphasis added).

139.    It is particularly unreasonable to prohibit consideration of monetary bail to fulfill the state's legitimate governmental interest when monetary bail is protected by the Constitution.

140.    Defendants' search and seizure violates the Fourth Amendment. Defendants' violation of Plaintiffs' Fourth Amendment rights has caused them substantial damages.

**PRAYER FOR RELIEF WHEREFORE,**

Plaintiffs respectfully request that this Court:

A. Enter judgment in HIS favor.

B. Declare that the CJRA violates the Eighth Amendment right of Plaintiff Giordano and other presumptively innocent criminal defendants to the option of non-excessive monetary bail that will reasonably assure their appearance at trial before being subjected to severe restrictions of their pre-trial liberty.

C. Declare that the CJRA violates the procedural and substantive due process rights of Plaintiff Giordano and other presumptively innocent criminal defendants to the option of non-excessive monetary bail that will reasonably assure their appearance at trial before being subjected to severe restrictions of their pre-trial liberty.

D. Declare that the CJRA violates the Fourth Amendment rights of Plaintiff Giordano and other presumptively innocent criminal defendants to be free from unreasonable searches and seizures.

E. Enter a preliminary injunction preventing Defendants and their agents from enforcing the provisions of the CJRA that allow them to impose severe restrictions on the pre-trial liberty of Plaintiff Giordano and other presumptively innocent criminal defendants without offering the option of non-excessive monetary bail that will reasonably assure their appearance at trial.

F. Enter a permanent injunction preventing Defendants and their agents from enforcing the provisions of the CJRA that allow them to impose severe restrictions on the pre-trial liberty of Plaintiff Holland and other presumptively innocent criminal defendants without offering the option of non-excessive monetary bail that will reasonably assure their appearance at trial.

G. Award Plaintiffs damages to compensate for the injuries they have suffered as a result of Defendants' unconstitutional conduct.

H. Award Plaintiffs the costs of their suit, including attorney fees and costs, pursuant to 42 U.S.C. §1988.

I. Grant any other and further relief that the Court deems just and proper.

I certify the foregoing statements made by me are true. If any of the statements made by me are willfully false, I'm subject to punishment.

8/1/2022                         **Erika Azurak**